UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN HENRY WILLIAMS,

    Petitioner,

v.

MARY BERGHUIS,

    Respondent.
_____/

Case No. 10-cv-10307

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner John Henry Williams, confined at the Brooks Correctional Facility in Muskegon, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Represented by counsel, Williams challenges his conviction for first-degree felony murder, Mich Comp. Laws § 750.316(1)(b). For the reasons stated below, the Court will deny the petition.

**FACTUAL BACKGROUND**

Williams was convicted of the above offense after a jury trial in the Wayne County Circuit Court.[1] He was tried jointly with co-defendant Corey Edward Frazier, who was convicted of first-degree premeditated murder, first-degree felony murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. Williams's conviction arises out of the shooting death of Gerald Gadie at his home in Detroit, Michigan. The following evidence was produced at trial.

On the afternoon of May 27, 2006, an unidentified person called 911 from a payphone to report a dead body at a home located at 19362 Hull Street in Detroit. Police

---

[1] Williams was acquitted of a separate charge of first-degree premeditated murder.

responded to investigate. Upon arrival, the police discovered that the doors to the home were locked and the windows barred. Officers gained entry by using a fishnet to go between the bars of an open window to fish the house keys off of a coffee table. Police discovered the victim's body in the basement lying face-up on the floor, with a single, near-contact gunshot wound to his head. They searched the house and found $6,285.00 in cash and a bag of suspected Ecstasy pills in a box on the television stand in the living room. Trial. Tr. day 1, 128-35, 179-81, 189-90, Nov. 13, 2006.

Kareemah Greer, the victim's neighbor, called Williams, who sold drugs with the victim, and informed him that Gadie was dead. Williams replied, "What; I'll call you back" and hung up. Fifteen to twenty minutes later, Williams and Frazier, who served as Gadie's bodyguard, drove to the scene and parked about two houses down from Gadie's home. Frazier walked over to Greer, hugged her, and said, "It's going to be okay; we going to find out who did this." Neither Williams nor Frazier attended Gadie's wake or funeral. Trial Tr. day 2, 8-9, 31-37, Nov. 14, 2006. Greer testified that on June 4, 2006, Williams told her that he participated in the armed robbery of Gadie, but insisted that Frazier shot and killed Gadie. *Id.* at 41-42.

Around the time of the funeral, Williams telephoned Gadie's cousin, Deville Thedford. Richard Peeples, another one of Gadie's cousins, overheard the conversation. Williams told Peeples and Thedford that he went with Frazier to Gadie's house, where Gadie let them in because the two men owed Gadie money. Frazier and Gadie began to fight. Williams told Thedford and Peeples that Frazier ordered Gadie to go to the basement so Williams and Frazier could rob him. Williams told Peeples and Thedford that Frazier told Gadie that they were only going to rob him, not kill him. Frazier told Williams to go through the house while Frazier went into the basement with Gadie. While Williams was going up

2

to the second floor of the house, he heard a gunshot.  Williams told Peeples and Thedford that he did not know that Frazier was going to kill Gadie and that he felt bad about it. Williams said he called 911 from a payphone twice, once to inform the police that someone was injured, and the second time to report the dead body.  Williams said he was going to turn himself in to the police.  *Id.* at 116-22, 127, 170-78.

After the funeral, Gadie's brother, Wayne Gadie, received a call from Frazier. Frazier told Wayne Gadie that Williams killed his brother and that Frazier had nothing to do with it.  Frazier told Wayne Gadie that he went into the bathroom, heard a gunshot, came out, and observed Williams holding a gun.  Frazier said that he and Williams then robbed the house, and Williams stole Gadie's diamond Rolex watch.  Trial Tr. day 3, 55-62, Nov. 15, 2006.

Donnell Hornbuckle testified that after Gadie died, Williams called him to report that Frazier killed the victim.  Williams told him that Frazier ordered Gadie to the basement, after which Williams heard a gunshot.  *Id.* at 98-99.

On November 3, 2006, while awaiting trial, Williams and Frazier were detained in the county jail along with Larry Oldham.  Oldham heard Frazier tell Williams to get some telephone records.  Frazier then told Williams, "Bitch, I wish I would have went on let you leave like I started to."  Frazier then advised Williams to testify in court that he left the house before Gadie was killed, explaining, "If you go in here and say [Gadie] was already—that you had already left, I will be able to handle this easier."  Trial Tr. day 2, 205-11, Nov. 14, 2006.

After hearing the evidence, the jury found Williams guilty of first-degree felony murder and acquitted him of first-degree premeditated murder.

Williams's conviction was affirmed on appeal.  *People v. Frazier*, Nos. 275083 &

3

275589, 2008 WL 782593 (Mich. Ct. App. Mar. 25, 2008) (per curiam), and leave to appeal to the Michigan Supreme Court was later denied. *People v. Williams*, 482 Mich. 1031 (2008).

Williams then filed the instant petition, seeking relief on the following grounds:

I. The State of Michigan unreasonably applied well-established federal law and unreasonably determined the facts in concluding that the trial court did not violate Mr. Williams' right to confrontation of witnesses under the United States Constitution when the trial court, over his objection, admitted an out of court statement of a non-testifying codefendant.

II. The State of Michigan unreasonably applied well-established federal law and unreasonably determined the facts in concluding that the trial court did not violate Mr. Williams' constitutional right to due process of law when it denied his motion for a jury separate from his codefendant where statements from his codefendant inculpated Mr. Williams and exculpated the codefendant.

III. The State of Michigan unreasonably applied well-established federal law and unreasonably determined the facts when it concluded that it was unlikely that the outcome of the trial court would have been different where Mr. Williams was denied his right to effective assistance of counsel guaranteed under the United States Constitution when his counsel failed to objection to the admission of testimony that Mr. Williams was engaged with the decedent in the business of selling drugs, failed to present evidence of telephone records and failed to allow Mr. Williams the opportunity to testify in his own defense.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable

4

>   determination of the facts in light of the evidence presented in
>   the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal court's task on habeas review is to "determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain relief in federal court, a state prisoner must show the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

## DISCUSSION

Williams raises three claims in his petition: 1) the introduction of hearsay testimony violated his rights under the Confrontation Clause; 2) failure to grant severance violated his right to due process; 3) ineffective assistance of trial counsel.

5

A. Confrontation Clause

Williams first contends that his right to confront the witnesses against him was violated when the trial court admitted an out of court statement made by co-defendant Frazier to Wayne Gadie accusing Williams of being the shooter. Williams contends that the admission of this statement at the joint trial, where Frazier did not testify, was contrary to *Bruton v. United States*, 391 U.S. 123, 127-28 (1968), in which the Supreme Court held that a defendant is denied the constitutional right of confrontation where a non-testifying co-defendant's incriminating confession is admitted at a joint trial.

The Warden contends that this claim is procedurally defaulted because Williams failed to preserve the claim at trial. Before trial, Williams's attorney filed a "motion to quash hearsay statement and for separate jury." In the motion, counsel argued that Frazier's statement should be suppressed because it lacked adequate indicia of reliability and because the statement was testimonial in nature. At oral argument on the motion, however, counsel objected to the admission of Frazier's statement only on hearsay grounds, without raising a Confrontation Clause objection. Counsel failed to renew the objection at trial when he learned that Frazier would not be testifying. The Michigan Court of Appeals found that Williams failed to preserve the confrontation clause claim and reviewed the challenge for plain error. *Frazier*, 2008 WL 782593, at *1, 3-4.

It is well established that the Michigan Court of Appeals' application of plain-error review constitutes the invocation of an independent and adequate procedural rule barring federal review of the merits of the claim absent a showing of cause and prejudice to excuse the procedural default. *See Fleming v. Metrish*, 556 F.3d 520, 530 (6th Cir. 2009). Williams did not argue cause and prejudice in his petition, nor did he file a reply brief addressing the Warden's argument that cause and prejudice did not exist to excuse the

default. It was Williams's burden to demonstrate cause and prejudice, *Haliym v. Mitchell*, 492 F.3d 680, 690 (6th Cir. 2007), and his failure to do so is fatal to his Confrontation Clause claim.

But even if the claim were not defaulted, the Court would not grant relief, for the claim lacks merit. The Michigan Court of Appeals concluded that no error occurred because Frazier's statement to Wayne Gadie was not testimonial and that any error in the admission of the statement was harmless in light of the additional incriminating evidence against Williams. *Frazier*, 2008 WL 782593, at *4. The Court agrees.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment's Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington*, 541 U.S. 36 (2004). The Confrontation Clause is not implicated, however, when the hearsay at issue is non-testimonial. *See Davis v. Washington*, 547 U.S. 813, 823-26 (2006). Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford*, 541 U.S. at 51-52, 56. As the Supreme Court stated in *Crawford*:

> The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to "witnesses" against the accused-in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.

*Crawford*, 541 U.S. at 51 (second alteration in original).

Moreover, "[b]ecause it is premised on the Confrontation Clause, the *Bruton* rule,

like the Confrontation Clause itself, does not apply to nontestimonial statements." *United States v. Johnson*, 581 F. 3d 320, 326 (6th Cir. 2009).

Frazier's statement to Wayne Gadie was not a testimonial statement covered by the Confrontation Clause because it was a casual remark made to a friend or acquaintance, not one made to law enforcement for the purpose of establishing a fact. *See Desai v. Booker*, 538 F.3d 424, 427 (6th Cir. 2008); *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005). "And the Confrontation Clause no longer applies to non-testimonial statements." *Desai*, 538 F.3d at 427 (citing *Davis*, 547 U.S. at 823-26). Thus, admission of Frazier's out-of-court statement to Wayne Gadie did not violate Williams's right to confrontation.[2] And for the same reason, admission was not contrary to the Supreme Court's decision in *Bruton*, as amended by *Crawford* and *Davis*.

Moreover, any error in admitting Frazier's statements was harmless. A Confrontation Clause error is subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). On habeas review, a federal court can grant habeas relief only if the trial error had "'substantial and injurious effect or influence in determining the jury's verdict.'" *Ford v. Curtis,* 277 F.3d 806, 809 (6th Cir. 2002) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)). Under this standard, a petitioner is not entitled to relief unless he can establish that the trial error resulted in "actual prejudice." *Id.* (internal quotation marks omitted); *see also Stanford v. Parker*, 266 F.3d 442, 456 (6th Cir. 2001) (articulating same standard of review for *Bruton* violation on collateral review). "An erroneous

---

[2] Williams appears only to claim that the admission of Frazier's statement to Wayne Gadie violated his right to confrontation. To the extent Williams contends that Frazier's statements to Williams overheard by Oldham should have been suppressed, he has failed to show a violation of his right to confrontation because statements between inmates in a prison or jail cell are non-testimonial. *See Davis*, 547 U.S. at 825.

8

admission of a non-testifying co-defendant's confession can constitute harmless error where the defendant claiming a *Bruton* violation confessed to full participation in the crimes." *Stanford*, 266 F.3d at 456.

Greer, Thedford, and Peeples all testified that Williams told them that he and Frazier agreed to rob the victim, during which time Frazier shot the victim. Williams also told Hornbuckle that he was in the victim's house with Frazier and heard a gunshot while Frazier and the victim were in the basement.

Williams's own statements to the witnesses were enough to convict him of first-degree felony murder on a theory of aiding and abetting. In Michigan, the elements of first-degree felony murder are:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute including armed robbery]. one of the felonies enumerated in the felony murder statute.

*People v. Carines*, 460 Mich. 750, 759 (1999) (citation omitted) (alterations in original). A jury can infer malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm. *Id.* at 759. Malice may also be inferred from the use of a deadly weapon. *Id.*

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Id.* at 757-58.

9

Courts have held that a defendant's participation in an armed robbery where he or a co-defendant is armed with a loaded firearm can demonstrate a reckless disregard that death or serious bodily injury could occur so as to support a conviction for felony-murder on an aiding and abetting theory. *See, e.g.*, *Meade v. Lavigne*, 265 F. Supp. 2d 849, 858-59 (E.D. Mich. 2003); *Harris v. Stovall*, 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998); *Carines*, 460 Mich. at 760-61; *People v. Turner,* 213 Mich. App. 558, 572-73 (1995), *overruled in part on other grounds by People v. Mass*, 464 Mich. 615 (2001); *People v. Hart*, 161 Mich. App. 630, 635 (1987); *see also Hill v. Hofbauer,* 337 F.3d 706, 719-20 (6th Cir. 2003) (holding that malice for second-degree murder can be inferred from aider and abettor's knowledge that principal possessed a weapon); *Redmond v. Jackson,* 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003) (holding that petitioner was not entitled to tolling due to claim of actual innocence where petitioner provided firearm to be used in armed robbery and thereby demonstrated a wanton and willful disregard of the fact that a person could be killed or suffer great bodily harm during the course of the robbery).

Because Williams admitted to several persons that he assisted in the armed robbery of the victim, there was sufficient evidence to convict him of first-degree felony murder, even if Frazier's statement to Wayne Gadie were excluded. The Court cannot say that the statement had a substantial and injurious effect or influence upon the jury's verdict. Therefore, even assuming an unreasonable Confrontation Clause error, the error was harmless. Williams is not entitled to relief on this claim.

B. Severance

Williams next contends that the trial court erred in failing to grant his motion for a separate trial or for separate juries.

The Michigan Court of Appeals rejected this claim on the merits:

10

> The trial court's finding that there was insufficient evidence of mutually exclusive defenses to support granting Williams' motion for either a separate trial or a separate jury was not an abuse of discretion. At trial, both Williams and Frazier presented similar defenses that the witnesses who recounted Williams's and Frazier's previous out of court statements were not credible. Additionally, neither defendant testified at trial, and Frazier's out of court statement to Gadie's brother did not incriminate Williams without also incriminating himself. Whereas Frazier's statement to Gadie's brother created the inference that Williams killed Gadie, Frazier admitted in this same statement that he "robbed" Gadie's house with Williams after Gadie was shot. So, defendants' defenses were not antagonistic, mutually exclusive, or irreconcilable. Thus, Williams has failed to show that he was entitled to a separate trial or separate jury.

*Frazier*, 2008 WL 782593, at *7.

A criminal defendant is not entitled to a separate trial merely because he or she might have had a better chance for acquittal in a separate trial. *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Nor does a criminal defendant have a right to a separate trial because the defendant and the co-defendant present antagonistic defenses, absent some evidence that alleged antagonistic defenses misled or confused the jury. *Stanford*, 266 F.3d at 458.

A petitioner seeking habeas relief on the ground that the state trial court's failure to sever his trial from co-defendant's trial bears a very heavy burden. *Id.* at 459. He must overcome the presumption that joinder of defendants for trial was the correct course. *See Foster v. Withrow*, 159 F. Supp. 2d 629, 641 (E.D. Mich. 2001). A court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. A potential for a *Bruton* violation may require severance. *See id.* at 539.

To the extent that Williams's severance claim is based upon the admission of Frazier's statements at their joint trial, he is not entitled to relief because he has not shown

11

that the admission of these statements was erroneous. *See, e.g.*, *United States v. Hamilton*, 689 F.2d 1262, 1275 (6th Cir. 1982).

More importantly, Williams has failed to show that there were mutually antagonistic defenses between he and Frazier to justify separate trials. The fact that a defendant seeks to lay blame upon the other defendant or defendants is not reason enough for a severance without a showing that "the jury is unable to treat evidence applicable to each defendant distinctively." *United States v. Smith*, 197 F.3d 225, 230 (6th Cir. 1999). Antagonistic defenses occur "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993).

Here, Williams and Frazier presented similar defenses, i.e., that the witnesses against them were not credible and that there was no physical evidence to corroborate their testimony. *See* Trial Tr. day 1, 120-21, 122-23; Trial Tr. day 3, 174-193; 194-199. There is no indication in the record that Frazier's attorney ever pointed the finger at Williams. In fact, Frazier's attorney challenged the credibility of Wayne Gadie's testimony in his closing argument. Trial Tr. day 3, 196. Because Williams's and Frazier's defenses were not mutually antagonistic or irreconcilable, Williams is not entitled to habeas relief on the severance claim.

C. <u>Ineffective Assistance of Counsel</u>

Finally, Williams contends he was deprived of the effective assistance of counsel.

To demonstrate the ineffective assistance of counsel, a defendant must satisfy two prongs. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome the strong presumption that counsel's behavior

lies within the wide range of reasonable professional assistance, for the challenged action might have been sound trial strategy. *Id.* at 687, 689. Second, the defendant must show that the performance prejudiced the defense. *Id.* at 689. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420. A "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.

Williams argues that counsel was ineffective for failing to present his telephone

records, which would have shown that Greer did not call Williams, thus impeaching her testimony that he called her.

The Michigan Court of Appeals rejected this claim, concluding that counsel's failure to present the telephone records would not have changed the outcome of the trial since Peeples, Thedford, and Hornbuckle all testified that Williams provided them information that linked himself to the shooting, and because Peeples's and Thedford's rendition of the information Williams provided in the phone call was "nearly identical in every material aspect to Greer's rendition of her phone call to Williams." *Frazier*, 2008 WL 782593, at *8. This was not an unreasonable application of *Strickland*.

Williams next alleges that counsel was ineffective because he did not allow Williams to testify at trial. Rejecting this claim, the Michigan Court of Appeals held that Williams had waived his right to testify at trial. *Id.* Review of the trial transcript confirms that Williams voluntarily waived his right to testify before the trial court after agreeing that counsel had explained to him the benefits and drawbacks of testifying. Trial Tr. day 3, 143.

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). On habeas review there is "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009). Overcoming the presumption, requires the petitioner to present record evidence that he "somehow alerted the trial court to his desire to testify." *Id.* Because the record lacks any indication that Williams disagreed with counsel's advice that he should not testify, he has not overcome the presumption.

Williams has also failed to show that he was prejudiced by counsel's advice

14

concerning whether he should testify. Williams merely states that he would have testified that he had nothing to do with the crime, but does not provide details of any proposed testimony. This does not establish prejudice. See *Hodge*, 579 F.3d at 641 (holding that defendant failed to demonstrate prejudice where defendant did not provide details about his proposed testimony and merely speculated that his testimony would have had impact on jury's view of witnesses' credibility and of his involvement in murders).

Williams claims finally that counsel was ineffective for not objecting to testimony that Williams and the victim were involved in drug dealing because the evidence was inadmissible under Michigan Rule of Evidence 404(b). The Michigan Court of Appeals rejected this claim, finding no violation of Rule 404(b) because the testimony was relevant to Williams's motive, made his confessions to Greer, Peeples, and Thedford more accurate, and was not unduly prejudicial. Given that the evidence was admissible, the court of appeals found counsel's decision not to object to its admission was sound trial strategy. *Frazier*, 2008 WL 782593, at *9.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Accordingly, the Court defers to the Michigan Court of Appeals' determination that the evidence was admissible. *See, e.g.*, *Brooks v. Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F. Supp. 2d 704, 721 (E.D. Mich. 2003)*; see also Karnes*, 397 F.3d at 453 (deferring to state court ruling on evidentiary issue in context of Confrontation Clause claim). Because the evidence was admissible under Michigan law, it was reasonable for the Michigan Court of Appeals to conclude that counsel was not ineffective for failing to challenging its admissibility.

D. Certificate of Appealability

Before a petitioner may appeal a judgment denying habeas relief, he must obtain a certificate of appealability from the district or circuit court. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). When denying relief, the district court must issue or deny a certificate of appealability. Rule 11(a) of the Rules Governing 2254 Cases, 28 U.S.C. foll. § 2254. A certificate may issue if the petitioner has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He does so by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Upon review, and for the reasons stated in the order above, the Court finds that Williams has not made a substantial showing of the denial of a constitutional right with respect to his claims. Specifically, the Court finds that reasonable jurists could not debate the correctness of the Court's resolution of Williams's claims.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a certificate of appealability on any issue.

**SO ORDERED.**

                                            s/Stephen J. Murphy, III
                                            STEPHEN J. MURPHY, III
                                            United States District Judge

Dated: May 6, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 6, 2011, by electronic and/or ordinary mail.

Carol Cohron<br>
Case Manager